IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **TYRONE OLIVER, No. B31327,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | **CIVIL NO. 15-cv-1268-MJR** |
| ) | |
| **JOHN BALDWIN,** ) | |
| **KURTIS HUNTER,** ) | |
| **LOUIS SHICKER** ) | |
| **DR. GARCIA,** ) | |
| **DR. RITZ,** ) | |
| **RODERICK MADDOX, and** ) | |
| **WEXFORD HEALTH** ) | |
| **SOURCE, INC.** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM AND ORDER

**REAGAN, Chief District Judge:**

Plaintiff Tyrone Oliver is currently incarcerated at Shawnee Correctional Center ("Shawnee"), located in Vienna, Illinois. Oliver brings this *pro se* action for deprivations of his Eighth Amendment rights pursuant to 42 U.S.C. § 1983 against several Shawnee, Illinois Department of Corrections ("IDOC"), and Wexford Health Source, Inc. ("Wexford") employees. (Doc. 1 at 2-4.) Oliver seeks monetary and declaratory relief. (*Id.* at 17.)

This matter is now before the Court for a preliminary review of Oliver's complaint pursuant to 28 U.S.C. § 1915A. Under § 1915A, the Court shall review a "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a government entity." During this preliminary review under § 1915A, the Court "shall identify cognizable claims or dismiss the complaint, or any portion of the complaint," if the complaint "is frivolous, malicious, or fails to state a claim on which relief may be granted" or if it "seeks

monetary relief from a defendant who is immune from such relief." Upon careful review of the complaint and any supporting exhibits, the Court finds it appropriate to exercise its authority under § 1915A. Portions of this action are subject to summary dismissal.

## Background

The complaint asserts the following facts. Oliver is currently 49 years old. In 2011, he was diagnosed with avascular necrosis and rheumatoid arthritis in his hips. Doctors informed him that he would eventually require hip replacement surgery, but in the meantime he was prescribed ibuprofen, naproxen, and many other pain relievers as short-term measures. About one or two years later, however, he became afflicted with stomach pain and nausea. He was taken to the hospital, where he underwent a blood transfusion procedure. At the hospital, he was told that the pain relievers he was inducing were possibly eating away at his stomach lining and causing intestinal ulcers.

Oliver was quite understandably shaken by his hospitalization and the revelation that his prescribed pain relievers were the possible causes of his discomfort. He was also still suffering from hip pain. Accordingly, he requested hip surgery. On October 15, 2013, however, his request was denied (by whom he does not say). The same day his request was denied, he was prescribed Ultram, a pain reliever.

Defendant Dr. Garcia evidently recommended an in-home exercise regimen for Oliver to strengthen his hips and ease his stiffness. To that end, Garcia advised Oliver to visit an orthopedic specialist. The specialist, who Oliver visited on March 20, 2014, did recommend a specific exercise regimen. He also, however, informed Oliver that hip surgery was necessary because "bone was now grinding on bone."

The exercise regimen eased Oliver's stiffness, but not his pain. To that end, roughly a year after the denial of his first request, he made a second request for surgery. On September 4, 2014, however, Garcia denied his request, recommending instead that Oliver be placed on another pain relief drug, continue his exercise regimen, and follow up with Dr. David (another prison physician). Oliver complained to Dr. David that the newly-prescribed medication caused adverse effects. Because of these adverse effects, Oliver ceased taking the new medication.

After suffering excruciating pain for several months, Oliver made a third request for hip replacement surgery. On March 31, 2015, Defendant Dr. Ritz rejected Oliver's request. Instead, Ritz recommended for Oliver additional pain relief medications, as well as continued monitoring. When Oliver asked Dr. David why Garcia and Ritz continued to deny his requests for surgery, Dr. David told him that they believed he was too young for hip replacement surgery.

All three denials of Oliver's request for hip replacement surgery were allegedly made pursuant to "Collegial Reviews" conducted by Defendant Louis Shicker, Medical Director of IDOC. Oliver alleges that Defendant Roderick Maddox, Defendant Wexford's Regional Medical Director, signed off on Garcia and Ritz' denials of Oliver's requests for hip replacement surgery.

Oliver filed emergency grievances with Defendant Kurtis Hunter, Shawnee's warden, detailing his ailments, recent medical history, and failed attempts to receive hip replacement surgery. Hunter denied Oliver's grievances. Defendant John Baldwin, Director of IDOC, affirmed the denial of Oliver's grievance by the Administrative Review Board Grievance Officer.

Oliver alleges he is unable to sit down for any period of time, run or go up and down stairs or ladders, tie his shoes, remove his socks, or get in and out of bed without experiencing pain.

**Discussion**

Oliver alleges that Defendants violated the Eighth Amendment to the United States Constitution when they denied his requests for hip replacement surgery and, instead, continued to prescribe pain relief medication.

The Eighth Amendment protects prisoners from cruel and unusual punishment. *See* U.S. CONST. amend. VIII. The Supreme Court has held that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *see Erickson v. Pardus*, 551 U.S. 89, 94 (2006) (per curiam). To state an Eighth Amendment claim for deficient medical care, prisoners must establish that (1) the medical condition was objectively serious, and (2) the state officials acted with deliberate indifference to the prisoner's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001). The complaint alleges an objectively serious medical condition: Oliver asserts he has experienced severe and persistent pain for years and difficulty doing such basic activities as tying his shoes without experiencing discomfort and pain. *See Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997) ("[T]he presence of a medical condition that significantly affects an individual's daily activities . . . or the existence of chronic and substantial pain" indicate the presence of a serious medical condition.) (internal quotation marks and citations omitted). Whether Oliver has stated a valid Eighth Amendment claim, therefore, turns on whether he has alleged facts indicating the Defendants acted with deliberate indifference to his health or safety.

Prison officials act with deliberate indifference when they "realize[] that a substantial risk of serious harm to a prisoner exists, but then disregard[] that risk." *Perez v. Fenoglio*, 792 F.3d 768, 776-77 (7th Cir. 2015) (citing *Farmer*, 511 U.S. at 837). "Delaying treatment may

constitute deliberate indifference if such delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (internal quotation marks and citations omitted). However, the Eighth Amendment does not give prisoners entitlement to "demand specific care" or "the best care possible," but only requires "reasonable measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Further, a defendant's inadvertent error, negligence, or even ordinary malpractice is insufficient to rise to the level of an Eighth Amendment constitutional violation. *See Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008).

Oliver's allegations against Defendants Garcia, Ritz, and Shicker survive preliminary screening. Both Garcia and Ritz were aware of Oliver's medical condition and were informed of the pain he was experiencing. While the complaint's assertion that hip replacement surgery is the best course of action does not trigger the Eighth Amendment's protections, *see Forbes*, 112 F.3d at 267, its allegations that Garcia and Ritz failed to assuage the pain in Oliver's hip save by prescribing pain medications that, at best, did little to alleviate any pain and, at worst, caused adverse reactions that exacerbated Oliver's maladies, render further factual development necessary to determine whether Garcia and Ritz's actions rose to the level of constitutional deprivations. As the complaint also alleges that Garcia and Ritz's denial of Oliver's requests for surgery were done pursuant to Collegial Reviews under the direction of Shicker, further factual development is necessary to determine whether Shicker's personal involvement in the Collegial Reviews constitutes a constitutional violation. Therefore, Oliver may proceed with his claims against Garcia, Ritz, and Shicker at this time.

Oliver may also proceed with his claims against Defendants Baldwin and Hunter at this time. In order to recover damages against prison officials in advisory roles, civil rights plaintiffs

may not rely on a theory of supervisory liability, but "instead must allege that the defendant, through his or her own conduct, has violated the Constitution." *Perez*, 792 F.3d at 781. In *Perez*, the Seventh Circuit held that a prisoner's correspondence to a prison supervisor may "establish a basis for personal liability under § 1983 where that correspondence provides sufficient knowledge of a constitutional deprivation." *Id.* at 781-82. In that case, the court found that the plaintiff stated a proper claim for relief against prison officials where the officials obtained actual knowledge of the prisoner's medical condition through his "coherent and highly detailed grievances and other correspondences" and yet "failed to intervene on [the prisoner's] behalf to rectify the situation." *Id.* at 782.

Here, Oliver alleges that he filed two emergency grievances which were reviewed and ultimately rejected by Hunter and Baldwin. The grievances, which Oliver attached to his complaint (Doc. 1-1 at 1-4), detail Oliver's failed attempts to receive hip replacement surgery, the pain he was experiencing, and the ineffectiveness of the pain relievers he was being prescribed. Because Oliver has presented to the Court detailed documentation indicating that Defendants Hunter and Baldwin obtained sufficient knowledge of Oliver's condition and yet failed to intervene on his behalf, his allegations against them survive preliminary review.

Oliver's claims against Defendant Maddox and Wexford, however, do not survive preliminary review. Oliver's claim against Maddox merely suggests that his surgical requests were "serious enough . . . to warrant the Regional Director['s] immediate attention," and asserts, without supporting factual details, that Maddox "allowed the denials [of Oliver's requests for surgery] to be signed off on by Dr. Garcia and Dr. Ritz." His claims against Maddox, therefore, does not rise above speculation, and appear to rest on a theory of supervisory liability, not

Maddox's personal conduct. Therefore, any claims against Maddox are dismissed without prejudice.

Oliver has also failed to properly allege that Wexford, a corporate entity, deprived him of any constitutional rights. For purposes of § 1983, the courts treat "a private corporation acting under color of state law as though it were a municipal entity," *Jackson v. Ill. Medi-Car, Inc.*, 300 F.3d 760, 766 n.6 (7th Cir. 2004), so Wexford will be treated as a municipal entity for this suit. "[T]o maintain a § 1983 claim against a municipality, [a plaintiff] must establish the requisite culpability (a 'policy or custom' attributable to municipal policymakers) and the requisite causation (the policy or custom was the 'moving force' behind the constitutional deprivation)." *Gable v. City of Chicago*, 296 F.3d 531, 537 (7th Cir. 2002) (quoting *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978)). Here, Oliver has not alleged any concrete policy or custom attributable to Wexford, and he has not claimed that any act by Wexford led to his alleged deprivation of rights. *See Olive v. Wexford Corp.*, 494 Fed.App'x 671, 673 (7th Cir. 2012) (allegation that Wexford had a policy of "denying prison inmates adequate medical care" insufficient, as it did not "identify any concrete policy, let alone an unconstitutional one"). As such, Oliver's claim against Wexford must be dismissed without prejudice.

### Motion for Recruitment of Counsel

Oliver has filed a motion for recruitment of counsel. (Doc. 2.) There is no constitutional or statutory right to appointment of counsel in federal civil cases. *Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010). However, federal district courts have discretion under 28 U.S.C. § 1915(e)(1) to request counsel to assist *pro se* litigants. *Id.* When presented with a request to appoint counsel, the Court must consider whether "(1) the indigent plaintiff [has] made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2)

given the difficulty of the case, [whether] the plaintiff appear[s] competent to litigate it himself [.]" *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007).

With regard to the first step of the inquiry, there is no indication whether Oliver has attempted to obtain counsel on his own, or has been effectively precluded from doing so. Because he has not made this showing, the Court finds that Oliver has not made a reasonable attempt to find counsel. Therefore, Oliver's motion for the appointment of counsel will be denied without prejudice.

### Disposition

**IT IS HEREBY ORDERED** that Plaintiff may proceed against Defendants **GARCIA**, **RITZ**, **SHICKER, BALDWIN**, and **HUNTER** on his Eighth Amendment claims.

Any claims against Defendants **MADDOX** and **WEXFORD** are **DISMISSED** without prejudice, and Defendants **MADDOX** and **WEXFORD** are **DISMISSED** from this action without prejudice.

The Clerk of Court shall prepare for Defendants **GARCIA, RITZ, SHICKER, BALDWIN,** and **HUNTER**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **STEPHEN C. WILLIAMS** for further pre-trial proceedings.

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge **STEPHEN C. WILLIAMS** for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral*.

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A). Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to

commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against Plaintiff and remit the balance to Plaintiff. Local Rule 3.1(c)(1).

**IT IS FURTHER ORDERED** that, for the reasons stated above, Plaintiff's motion for attorney representation (Doc. 2) is **DENIED** without prejudice.

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: December 11, 2015**

                                                      s/ MICHAEL J. REAGAN
                                                      Chief Judge
                                                      United States District Court