IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS


TYRONE OLIVER,

     Plaintiff,

vs.

JOHN BALDWIN, KURTIS HUNTER,
LOUIS SHICKER, DR. GARCIA, and
DR. RITZ,

     Defendants.

Case No.   15-cv-1268-MJR-SCW


## REPORT AND RECOMMENDATION

**WILLIAMS, Magistrate Judge:**


### INTRODUCTION

Pursuant to 42 U.S.C. § 1983, *pro se* Plaintiff Tyrone Oliver filed a complaint against Defendants for deliberate indifference to his hip pain.  Specifically, Plaintiff alleges that Defendants denied his request for hip replacement surgery and continued to prescribe him pain relief medication instead, which caused him stomach ailments.   This matter is before the Court on motions for summary judgment filed by Defendants Hector Garcia and Stephen Ritz (Docs. 48 and 49) and Defendants John Baldwin, Louis Shicker, and Kurtis Hunter (Docs. 51 and 52).   Plaintiff has filed a response (Doc. 59) in opposition to both motions.   The matter has been referred to United States Magistrate Judge Stephen C. Williams by United States District Judge Michael J. Reagan pursuant to

**28 U.S.C. §§ 636(b)(1)(B) and (c)**, **Federal Rule of Civil Procedure 72(b)**, and **Local Rule 72.1(a)**.   The undersigned held a hearing on January 17, 2017.   Based on the following, it is **RECOMMENDED** that the Court **GRANT** both sets of Defendants' motions for summary judgment.

FACTUAL BACKGROUND

### A. Procedural and Factual Background

On November 13, 2015, *pro se* Plaintiff Tyrone Oliver, currently housed at Jacksonville Correctional Center, filed his complaint against various Defendants for deliberate indifference to his hip pain.   As narrowed by the threshold Order (Doc. 7), Plaintiff's complaint alleges that he was diagnosed in 2011 with avascular necrosis and rheumatoid arthritis in his hips and doctors told him he would eventually need hip replacement surgery.   In the meantime, doctors prescribed him pain medication, including ibuprofen and naproxen (Doc. 7, p. 2).   Two years later he was taken to the hospital for stomach pain and nausea and he was informed by hospital staff that the pain relievers were possibly eating away at his stomach lining, causing ulcers (*Id*.).

Plaintiff requested surgery for his hip on October 15, 2013, but that request was denied and he was, instead, prescribed Ultram (Doc. 7, p. 2).   Dr. Garcia later recommended exercises for Plaintiff to strengthen his hip and ease stiffness.   He also scheduled Plaintiff to meet with an orthopedic specialist (*Id*.).   Plaintiff met with the specialist on March 20, 2014 and the specialist also recommended an exercise regimen for his hip, but also indicated that hip surgery was necessary because he had bone

grinding on bone (*Id.*).

Plaintiff alleges that while the exercise regimen helped with stiffness, he was still in pain and requested surgery again (Doc. 7, p. 3).   Dr. Garcia denied the request on September 4, 2014 instead placing Plaintiff on another pain reliever, continuing his exercise regimen, and ordering him to follow up with another prison doctor.   Plaintiff complained to that doctor, Dr. David, that the pain mediation was causing side effects and thus Plaintiff stopped taking the medication (*Id.*).

Plaintiff made a third request for surgery after suffering pain for several months, presumably without pain relievers (Doc. 7, p. 3).   Dr. Ritz denied that request on March 31, 2015.   Plaintiff was told by Dr. David that he was denied surgery because he was too young for hip replacement (*Id.*).   All three denials for surgery were denied by Louis Shicker, the medical Director of IDOC through collegial review (*Id.*).   Plaintiff also filed emergency grievances with Kurtis Hunter, Shawnee Correctional Center's warden, but the grievance was denied (*Id.*).   John Baldwin, IDOC director, also denied Plaintiff's grievances regarding his pain and failed attempts for surgery (*Id.*).

In response to Plaintiff's complaint, summary judgment motions were filed by Hector Garcia and Stephen Ritz (Docs. 48 and 49) as well as by John Baldwin, Louis Shicker, and Kurtis Hunter (Docs. 51 and 52).   Defendants argue that Plaintiff failed to exhaust his administrative remedies against them because he did not properly identify any of the Defendants, other than Defendant Garcia, and failed to properly exhaust his administrative remedies through all levels of IDOC's administrative process.

Plaintiff submitted an emergency grievance on April 2, 2015 for issues regarding his medical care (Doc. 1-1, p. 1).   This grievance alleged that his serious medical needs were inadequately treated as he was denied hip replacement surgery (*Id*.).   Plaintiff indicated that his grievance was against Doctor Garcia of the "Collegial Review" (*Id*.). Plaintiff's grievance alleged that he was diagnosed in 2011 with advanced arthritis in his hips and that he had serious stomach pains due to the prescribed NSAIDS (*Id*.). Plaintiff alleged that he was denied surgery and that Garcia recommended a medication which he cannot take (Doc. 1-1, p. 2).   Plaintiff's grievance indicated that he had trouble going up in down steps, getting out of bed, and tying his shoes (*Id*.).   He noted that Garcia denied him surgery at least three times (*Id*.).   He was in constant pain and the prescribed pain medication was damaging his stomach (*Id*.).   His grievance alleged that Wexford was trying to avoid his needed surgery (*Id*.).

Defendants Stephen Ritz, John Baldwin, Louis Shicker, and Kurtis Hunter argue that they are entitled to summary judgment because the grievance does not identify them, rather it is only directed at Dr. Garcia.   They point out that Plaintiff's grievance states in the beginning that he is grieving against Dr. Garcia (Doc. 1-1, p. 1).   Plaintiff argues in his response that he did not know Dr. Ritz's name at the time that he filed his grievance and only learned of Ritz through discovery, after he filed his grievance. Hunter reviewed Plaintiff's grievance and denied it.   Hunter, as warden of Shawnee Correctional Center, reviewed Plaintiff's April 9, 2015 emergency grievance and indicated that it was not an emergency (Doc. 1-1, p. 1).   He did not rule on the merits of

the grievance at that time, but rather returned it to Plaintiff to submit through the normal grievance process.   While that grievance eventually reached the ARB, the grievance was denied by Leslie McCarty, not John Baldwin (Doc. 1-1, p. 5; 49-1, p. 3). Further, Defendant Shicker argues that he did not review the grievance submitted by Plaintiff as he is the Medical Director at IDOC.   The grievance was only reviewed by the healthcare administrator at Shawnee, Sherri Lynn (Doc. 1-1, p. 1).

In addition to the issue with identifying the Defendants in the grievance, all of the Defendants, including Garcia, argue that Plaintiff failed to properly exhaust his April 4, 2015 grievance.   That grievance was submitted as an emergency grievance and was received by the warden on April 9, 2015 (Doc. 1-1, p. 1).   The grievance was returned to Plaintiff that same date (*Id.*).   Plaintiff then submitted the grievance to his counselor on April 16, 2015 where the counselor noted that Plaintiff's care is being followed by both a nurse practitioner and physician (*Id.*).   The grievance was then received by the ARB on April 29, 2015 (Doc. 49-1, p. 6).   That grievance, along with a grievance dated April 24, 2015, and complaining about his counselor providing false information, was rejected by the ARB on May 7, 2015 for failing to provide a copy of the grievance officer and chief administrative officer's response to the grievance (Doc. 49-1, p. 3).   The grievance was returned with instructions to provide dates of the denials of the grievances (*Id.*).   The ARB did not receive a response from Plaintiff, according to the ARB (Doc. 49-1, p. 2).

Plaintiff, however, argues that he submitted the grievance to the grievance officer but never received a response.   Plaintiff admits that he submitted the grievance directly

to the ARB, but only as a fail-safe measure in case his grievance went missing at the institutional level.   Plaintiff argues that in addition to sending the grievance to the ARB, he submitted a copy of the grievance to the grievance officer.   Plaintiff argues that he never received a response to the grievance from the grievance officer.   Plaintiff also stated that he responded to the ARB's inquiry by providing them with a response on June 3, 2015 (Doc. 59, p. 22).   Plaintiff points to a legal mail register from Shawnee Correctional Center which notes that mail was sent to the "PRB" from Plaintiff on June 3, 2015 (*Id*.).   The ARB's log does not indicate that any such response was received by the ARB (Doc. 49-1, p. 2).

As there is a dispute over whether Plaintiff submitted his grievance to the grievance officer and a response was never provided, the undersigned set this matter for an evidentiary hearing pursuant to *Pavey v. Conley*, **544 F.3d 739, 740-41(7th Cir. 2008).**

## B. *Pavey* Hearing

The undersigned first set this matter for an evidentiary hearing on January 10, 2017.   However, due to technical difficulties, the evidentiary hearing was reset for January 17, 2017.   At the January 17, 2017 hearing, the undersigned heard testimony from Kendra Seip, Leslie McCarty, and Plaintiff.

### 1.    *Kendra Seip*

The undersigned first heard testimony from Kenra Seip, a casework supervisor at Shawnee Correctional Center who formerly served as the grievance officer.   Seip testified that Shawnee maintains a log of all grievances that are received by the grievance

officer.   Seip reviewed the 2015 grievance log and was unable to locate any grievances from Plaintiff.   The Court was also provided with a copy of the grievance log (*See* Doc. 72.1).   There are no grievances listed on the log from Plaintiff.   Seip testified that emergency grievances that are marked as not an emergency and returned to the inmate are not marked on the grievance log.   However, if it is labeled an emergency, the grievance is then forwarded directly to the grievance officer where it is then logged on the grievance log.

### 2.   *Leslie McCarty*

Leslie McCarty, manager of the ARB, testified about the grievances that the ARB received from Plaintiff.   McCarty testified that when a grievance is received by the ARB it is logged on the IGRV log.   The ARB received a grievance from Plaintiff on April 29, 2015 that was dated April 2, 2015.   Along with the April 2, 2015 grievance, the ARB received a grievance dated April 24, 2015.   Those grievances were returned because Plaintiff failed to provide the dates for his denial of treatment which occurred in the previous sixty days prior to the grievance, as well as because he failed to attach the grievance officer or chief administrative officer response (Doc. 49-1, p. 2 and 3).   McCarty noted that there is a sixty day timeframe from the discovery of an issue to submit a grievance and the last date in Plaintiff's April 2, 2015 grievance mentions care he received on March 20, 2014.

McCarty testified that if Plaintiff wrote letters regarding the grievance they would not be listed in the IGRV log, unless they were attached to a corresponding grievance.

If an inmate seeks to attach additional information to a grievance, then that information would be logged.   Those records would be attached to the relevant grievance and would be produced with the ARB records.   Letters, however, are not normally included in the IGRV log.

McCarty also testified as to the PRB, or prisoner review board.   That board deals with a variety of issues including prisoner release and revoked or restored good time credit.

Plaintiff asked McCarty if the ARB ever received additional information he provided to the ARB in response to his returned grievance, showing the dates of denials for surgery.   McCarty testified that the grievances from April were the only ones that the ARB received regarding Plaintiff's medical treatment.   Plaintiff also noted that he wrote a letter to the ARB asking about the status of his grievance, but McCarty testified that the letter would not be listed on the log.   McCarty stated that with any request for status, she writes the status of the grievance on the inmate's letter and sends it back to the inmate.   Those letters are not logged on the IGRV log.   McCarty further confirmed with the Court that while letters are not logged, any letter that is sent as follow-up to a grievance would be attached to the corresponding grievance so that the ARB can conduct further review of that additional information.

### 3.   *Plaintiff's Testimony*

Plaintiff next testified about his grievances.   Plaintiff testified that he submitted the April 2, 2015 grievance as an emergency and the warden returned it after deeming it

not an emergency.   He then submitted the grievance to his counselor.   Plaintiff testified that he received the grievance back from his counselor on April 16, 2015.   Plaintiff testified that he then immediately submitted the grievance to the grievance officer by placing a copy in the grievance box in dietary, placing a copy under the counselor's door, and delivering a copy to the grievance office.   Plaintiff clarified that he submitted the grievance one or two days after receiving the grievance back from his counselor.

Plaintiff also testified that he sent a copy of the grievance to the ARB.   According to Plaintiff, he did this because of a conversation he had with his counselor.   Plaintiff felt he was not getting proper consideration of his grievance and sent it to the ARB as a safety measure.   The counselor's response noted that the counselor spoke with Sherri Lynn about the issues in the grievance and Plaintiff questioned the counselor on that fact because he believed that Sherri Lynn retired on April 3, 2015 so the counselor could not have spoken to her about his grievance.   Plaintiff testified that the counselor became belligerent and threatened to place him in segregation.   Thus, he filed the April 24, 2015 grievance about his counselor.

Plaintiff testified that he filed the second grievance on April 24, 2015 because it took him time to get to the law library and make copies.   After the incident with the counselor he decided to send the grievances to the ARB.   He never received a response to the April 24, 2015 grievance.   Plaintiff testified that he sent the April 2, 2015 and April 24, 2015 grievance together to the grievance office, by placing one in the box in dietary, one to the counselor, and one copy to the grievance office.   Every time he submitted the

grievances he submitted the two together.   He testified that he sent copies to the grievance office and then the ARB.

Plaintiff testified that he received the response from the ARB, returning his grievance.   In response, Plaintiff testified that he sent the ARB three documents indicating that his request for surgery was denied (See also Doc. 59, p. 19-21).   The third medical document indicates that Plaintiff's request for an outside consultation was denied on March 31, 2015 (Doc. 59, p. 21).   Plaintiff testified that he sent copies of his grievances and the denials on June 3, 2015, but never heard back from the ARB. Plaintiff pointed to the legal mail sheet to show that the documents were sent on June 3, 2015.   That document indicates that mail was sent to the PRB (Doc. 59, p. 22).   When he didn't receive a response from the ARB, Plaintiff testified that he sent a letter to the ARB in July inquiring about the status of the grievance and never received a response.   He then waited until November, when he filed his complaint.

## Legal Standards

Summary Judgment is proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to judgment as a matter of law." ***Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010).**   Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA").   **42 U.S.C. §1997e(a).**   That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail,

prison, or other correctional facility until such administrative remedies as are available are exhausted." ***Id.* (emphasis added).**   The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement.  ***Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (noting that '[t]his circuit has taken a strict compliance approach to exhaustion").** Exhaustion must occur before the suit is filed.  ***Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004).**   Plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending.  ***Id.*   Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require."  ***Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2005).**   Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted."   ***Dole*, 438 F.3d at 809.**

Under *Pavey*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge.  ***Pavey v. Conley*, 544 F.3d 739, 740-41(7th Cir. 2008).**   Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Court set forth the following recommendations:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate.  (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no

unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over.   (3)If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id*. at 742.

## A.  Illinois Exhaustion Requirements

As an inmate confined within the Illinois Department of Corrections, Plaintiff was required to follow the regulations contained in the Illinois Department of Correction's Grievance Procedures for Offenders ("grievance procedures") to properly exhaust his claims.   **20 Ill. Administrative Code §504.800** *et seq*.   The grievance procedures first require inmates to speak with the counselor about their complaint.   **20 Ill. Admin. Code §504.810(a).**   Then, if the counselor does not resolve the issue, the inmate must file a grievance form directed to the Grievance Officer within 60 days of the incident.   *Id.* The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is subject of or who is otherwise involved in the complaint.   The provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

**20 Ill. Admin. Code §504.810(a)(b).**   "The Grievance Officer shall [then] consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer...[who]shall advise the offender of the decision in writing within 2 months after receipt of the written grievance, where reasonably feasible under the circumstances."   **20 Ill. Admin. Code §504.830(d).**   If the inmate is not satisfied with the Chief Administrative Officer's response, he or she can file an appeal with the Director through the Administrative Review Board ("ARB").   The grievance procedures specifically state, "[i]f after receiving the response of the Chief Administrative Officer, the offender still feels that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director within 30 days after the date of the decision.   Copies of the Grievance Officer's report and the Chief Administrative Officer's decision should be attached."   **20 Ill. Admin. Code §504.850(a).**   "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations."   **20 Ill. Admin. Code §504.850(e).**   "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, where reasonably feasible under the circumstances.   The offender shall be sent a copy of the Director's decision."   **20 Ill. Admin. Code §504.850(f).**

The grievance procedures do allow for an inmate to file an emergency grievance. In order to file an emergency grievance, the inmate must forward the grievance directly to the Chief Administrative Officer ("CAO") who may "[determine] that there is a

substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be handled on an emergency basis. **20 Ill. Admin. Code §504.840(a).** If an inmate forwards the grievance to the CAO as an emergency grievance, then the CAO "shall expedite processing of the grievance and respond to the offender" indicating to him which course he has decided is necessary after reading the grievance. **20 Ill. Admin. Code §504.840(b).** Once the CAO has informed the inmate of his decision, the inmate may then appeal that decision to the ARB on an expedited basis. **20 Ill. Admin. Code §504.850(g).**

### ANALYSIS

Defendants argue that Plaintiff failed to exhaust his administrative remedies because Plaintiff failed to submit his April 2, 2015 grievance to the grievance officer prior to submitting the grievance to the ARB. Plaintiff, however, argues that he never received a response from the grievance officer. If the Court believes that Plaintiff filed his April 2, 2015 grievance to the grievance officer and the grievance officer never responded, then Plaintiff's attempts at exhaustion would be deemed thwarted and he may proceed with his lawsuit. *See Walker v. Sheahan*, **526 F.3d 973, 979 (7th Cir. 2000) (an inmate is not required to appeal his grievance if he submits the grievance to the proper authorities but never receives a response);** *Dole v. Chandler*, **438 F.3d 804, 809 (7th Cir. 2006) (a remedy can be unavailable to a prisoner if the prison does not respond to the grievance or uses misconduct to prevent a prisoner from exhausting his resources);** *Brown v. Darnold*, **2010 WL 3702373, at \*3 (S.D. Ill. 2010) ("The Seventh**

Circuit has held that administrative remedies become 'unavailable' when prison officials fail to respond to inmate grievances." (quoting *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002)).

However, the undersigned does not find Plaintiff's testimony to be credible. The evidence in the record shows that Plaintiff received his grievance back from the counselor on April 16, 2015 and it was received by the ARB, along with his April 24, 2015 grievance, on April 29, 2015. Plaintiff does not deny this. However, Plaintiff testified that he first sent the grievance to the grievance officer but never received a response. The undersigned finds Plaintiff's testimony regarding his April 2, 2015 grievance to lack credibility because his testimony contradicts himself. Plaintiff first testified that he received the grievance back from the counselor on April 16, 2015 and then submitted three copies of the grievance at the institutional level (one to the counselor, one to the grievance officer, and one in the grievance box in dietary) one or two days after receiving the grievance from the counselor. He later testified, however, that it took him a few days to visit the library to make copies and that he submitted three copies of both the April 24, 2015 and April 2, 2015 grievance together at the institutional level. But his April 24, 2015 grievance would not have been written one or two days after he received the grievance back from his counselor on April 16, 2015. Thus, the undersigned does not find credible Plaintiff's testimony that he submitted the April 2, 2015 grievance to the grievance officer one or two days after he received the grievance back on April 16, 2015.

Nor does the undersigned find Plaintiff's testimony that he submitted the April

24, 2015 and April 2, 2015 grievance to the grievance officer at a later date (presumably after the April 24, 2015 grievance was written, but before submitting his grievance to the ARB) to be credible.   There is no evidence on the grievance log that Plaintiff ever submitted these grievances.[1]   And both grievances were received by the ARB mere days later, on April 29, 2015.   Thus, Plaintiff could not have submitted the grievances to the grievance officer and waited for a response before submitting them to the ARB.

Plaintiff tries to provide an explanation as to why both grievances were received by the ARB on April 29, 2015.   Plaintiff testified that he submitted copies of the grievances directly to the ARB as a failsafe measure.   Plaintiff testified that he got into a disagreement with his counselor after receiving the April 2, 2015 grievance back from her because he believed that she lied in the response.   She threatened to send him to segregation and thus Plaintiff decided to send them directly to the ARB.   Plaintiff testified that he sent the grievance directly to the ARB as a safety measure because he was not getting proper consideration and he didn't trust the grievance process after his conversation with the counselor.   He also later testified that he got such a hard time when he did ask questions that he decided to send it to the ARB because he wasn't getting professional help at Shawnee.

The undersigned does not credit Plaintiff's explanation.   There are no records to suggest that he submitted the grievance to the grievance officer.   Instead, it appears,

---

[1] Defendants first submitted an email from an administrative assistant at Shawnee which indicated that there were no grievances in Plaintiff's master file (Doc. 49-2).   At the *Pavey* hearing, the undersigned rejected the email as hearsay.   However, Defendants submitted a copy of Shawnee's grievance logs for 2015 as evidence that Plaintiff did not submit a grievance to the grievance officer during the relevant time period.

given the timeline in which the grievances were received, that Plaintiff did not just send the grievances to the ARB as a safety measure but that Plaintiff only submitted the grievances directly to the ARB, bypassing the grievance office.   Plaintiff testified that he didn't trust the grievance procedure and that he didn't think he was getting proper consideration at the institutional level.   The grievances were received mere days after his April 24, 2015 grievance was written, not enough time to even submit the grievances to the grievance officer for consideration and have them returned before submitting them to the ARB.   The evidence suggests that Plaintiff, instead, submitted the grievances directly to the ARB and never submitted them to the grievance officer.

Plaintiff also points out that he responded to the ARB when they returned the grievances for failing to attach the grievance officer's response and for not identifying the last date of treatment.   However, there are no records with the ARB or in the ARB log to suggest that the records were received.   McCarty testified that subsequent documents and letters sent related to a grievance would be attached to the grievance for review.   No such attachments were added to Plaintiff's file.   While Plaintiff points to a mail slip as proof that he sent the documents, the Court notes that the mail was addressed to PRB, not the ARB.   Plaintiff argues that those two entities are the same, but the Prison Review Board (PRB) deals with good time credit and issues related to an inmate's sentence, not grievance issues such as the one Plaintiff filed.   The records do not support Plaintiff's claim that he tried to submit additional documentation.

Further, the additional documentation which Plaintiff sought to submit to the

ARB does not offer additional proof that his grievances were submitted to the grievance office and not responded to. Instead, the documents were denials for further consultation regarding his hip. Plaintiff did not include a letter to the ARB indicating that he never received a response from his grievance officer, nor did he offer any other documentation to demonstrate that he tried to exhaust his grievances fully through the institutional level. The undersigned finds that he did not submit such a letter, because he did not grieve his issues to the grievance officer. Instead, he submitted the grievances directly to the ARB, thus bypassing the grievance office. As such, the undersigned **RECOMMENDS** that the Court **FIND** that Plaintiff failed to submit his April 2, 2015 grievance to the grievance officer, thus failing to fully exhaust his grievance at the institutional level before submitted the grievance to the ARB.[2]

### CONCLUSION

Accordingly, it is **RECOMMENDED** that the Court **GRANT** both sets of Defendants' motions for summary judgment (Docs. 48, 49 and 51, 52) and **DISMISS without prejudice** Plaintiff's claims for failure to exhaust his administrative remedies.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 73.1(b), the parties may object to any or all of the proposed dispositive findings in this Recommendation. The failure to file a timely objection may result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. ***See, e.g.,***

---

[2] Having found that Plaintiff failed to exhaust his administrative remedies by failing to submit his grievance to the grievance officer, the undersigned need not reach the issue of whether all of the Defendants were properly identified in Plaintiff's grievance.

*Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004).   Accordingly, Objections to this

Report and Recommendation must be filed on or before **February 10, 2017.**


       **IT IS SO ORDERED**.
       DATED: January 24, 2017.

                             */s/ Stephen C. Williams*
                             STEPHEN C. WILLIAMS
                             United States Magistrate Judge