IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TYRONE OLIVER, No. B31327, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 15-cv-1268-MJR-SCW |
| ) | |
| JOHN BALDWIN, ) | |
| KURTIS HUNTER, ) | |
| LOUIS SHICKER, ) | |
| DR. GARCIA, and ) | |
| DR. RITZ, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

**REAGAN, Chief Judge:**

### I.    Introduction

This matter is now before the Court on a Report and Recommendation (R&R) from Magistrate Judge Stephen C. Williams (Doc. 73).  The Plaintiff filed his Objections to the R&R at the institution on February 3, 2017, though the document did not reach the Court until February 14, 2017 (Doc. 74).[1]  Plaintiff's underlying complaint alleges that the Defendants acted in deliberate indifference by failing to provide timely or sufficient treatment for his chronic hip pain and the stomach pain that resulted from

---

[1] Plaintiff's objections to the R&R were technically untimely.  The R&R set a response deadline of February 10, 2017.  Even adding the 3 days after action is due, pursuant to FED. R. CIV. P. 6(d), the objections would have been due by February 13, 2017.  The Court received the objections on February 14, 2017.  However, out of an abundance of caution, the Court will consider the objections because the notarized proof of service attached to the objections indicates that the document was deposited in the prison mail system on February 3, 2017 (See Doc. 74 at 13).

prescription pain medications (Doc. 1). The Defendants moved for summary judgment on the premise that Plaintiff failed to exhaust the appropriate administrative channels to grieve his concerns (Docs. 48, 49, 51, 52). Plaintiff responded to the motions (Doc. 59). On January 17, 2017, an evidentiary *Pavey*[2] hearing was held before Magistrate Judge Williams to assess the credibility of conflicting accounts about the Plaintiff's use of the grievance process. The R&R recommends granting summary judgment in favor of all named Defendants because Plaintiff failed to exhaust administrative remedies (Doc. 73). Plaintiff opposes this recommendation (Doc. 74). The matter is now before the undersigned.

## II. Facts

The facts set forth in this section will be limited to those necessary for this Court to review the R&R. A more comprehensive recitation of the facts can be found in Magistrate Judge Williams' R&R (Doc. 73).

Plaintiff filed his first grievance—filed as an emergency—on April 2, 2015, while incarcerated at Shawnee Correctional Center. The grievance was returned to him after it was deemed a non-emergency. Kendra Seip (a former grievance officer) testified at the *Pavey* hearing that emergency grievances did not appear on the log form she had unless the grievances were officially deemed an emergency and were forwarded to the grievance officer.

---

[2] *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008) (indicating that a judge, not a jury should resolve initial disputes about exhaustion in prisoner cases, and setting forth the procedure to be followed in doing so).

Plaintiff contends that once his grievance was deemed a non-emergency, he submitted it to his counselor. His counselor responded on April 16, 2015. Upon receiving the response from his counselor, Plaintiff testified both that he immediately submitted it to the grievance officer and that it took him a few days to submit it because he needed access to the law library and to copying facilities. It is unclear from Plaintiff's testimony and written filings the precise date upon which he allegedly submitted his grievance to the institutional grievance officer—but he appears to claim that he did so sometime between April 16 and April 29, 2015.

Plaintiff's testimony and assertions that he submitted a grievance to the institutional grievance officer are directly contradicted by Seip's testimony that the 2015 grievance log at Shawnee did not reflect any grievances filed by Plaintiff. In his objections to the R&R Plaintiff claims that Seip testified that Shawnee did not keep a grievance log (Doc. 74). However, what Seip actually testified was that Shawnee did not keep a log of *emergency* grievances that were deemed *non-emergencies*.[3] By contrast, Seip testified that Shawnee did keep a log of grievances submitted through the normal channels and that the log did not reflect any grievances in 2015 by the Plaintiff.

Plaintiff also alleges that he submitted the April 2, 2015 grievance and the April 24, 2015 grievance to the Administrative Review Board (ARB). ARB Manager, Leslie McCarty, testified that the ARB received a grievance from Plaintiff on April 29, 2015.

---

[3] The Court verified Seip's testimony by reviewing the transcript of the January 17, 2017 hearing before Magistrate Judge Williams.

The grievance included copies of Plaintiff's April 2 and April 24 institutional grievances. McCarty testified that the grievances were returned to Plaintiff because he failed to include proof that he had exhausted the grievances to the grievance officers or chief administrative officers at his institution. Plaintiff agreed that the ARB responded to his grievance, and he testified that on June 3, 2015, he provided copies of his grievances and the denials, but never heard back from the ARB. Plaintiff alleges that he followed up with the ARB via letter in July 2015, received no response, and subsequently filed the complaint in the underlying matter in November 2015.

To date, Plaintiff maintains the position that he has not received any response to grievances he submitted at the institutional level.

Upon review of the motions for summary judgment, the Plaintiff's response, and the testimony at the *Pavey* hearing, Magistrate Judge Williams found that Plaintiff's testimony lacked credibility, and that the record evidence supported granting the motions for summary judgment (Doc. 73 at 15). As a part of this finding, Magistrate Judge Williams specifically found that Plaintiff likely circumvented the institutional grievance procedure on April 24, 2015, and instead went straight to the ARB (Doc. 73 at 15-18). Judge Williams based this finding on the evidence that the institutional grievance logs did not reflect any grievances in 2015 by Plaintiff, and on the fact that it would have been impossible for Plaintiff to have filed and fully exhausted the institutional process between April 16, 2015, and the date the ARB received his

grievance on April 29, 2015 (*Id.*). Accordingly, Judge Williams concluded that Plaintiff did not exhaust the institutional grievance procedure.

### III. Legal Analysis

When a party timely objects to a magistrate judge's R & R, the district court–giving deference to the magistrate judge's findings of fact and credibility determinations as noted below—must undertake *de novo* review of the portions to which an objection has been made. **28 U.S.C. § 636(b)(1)(C)**. Here, Plaintiff's objections to the R&R largely reiterate things he already argued in his response to summary judgment (Compare Docs. 59 and 74). In addition to his previous arguments, Plaintiff also takes issue with the R&R's characterization of certain testimony at the *Pavey* hearing and alleges that the Defendants have failed to prove that there is still a remedy available to him (Doc. 74 at 5, 8-9).

As an inmate, Plaintiff's lawsuit is governed by the Prison Litigation Reform Act ("PLRA"), which requires a prisoner to exhaust his administrative remedies before filing suit. **42 U.S.C. § 1997e.** In Illinois, the grievance process requires a prisoner to speak with his counselor, file a written grievance, and then appeal that grievance through the institutional and state / ARB levels. **20 ILL. ADMIN. CODE §§ 504.810–850**. A prisoner may also request a grievance be handled "on an emergency basis" by forwarding it straight to the warden, who must expedite processing of the grievance; the inmate may directly appeal the warden's decision to the ARB. **20 ILL. ADMIN. CODE**

**§§ 504.840, 850(g).** Though the Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement, *Dole v. Chandler*, **438 F.3d 804, 809 (7th Cir. 2006)**, the PLRA's plain language is clear: an inmate must exhaust only those administrative remedies that are available to him, **42 U.S.C. § 1997e(a)**. Administrative remedies become "unavailable" when prison officials fail to respond to a properly filed inmate grievance—as Plaintiff claims they did here—or, *Lewis v. Washington*, **300 F.3d 829, 833 (7th Cir. 2002)**, when prison employees thwart a prisoner from exhausting, *Dole*, **438 F.3d at 809**.

In *Pavey v. Conley* (*Pavey I*), the Seventh Circuit set forth the procedures for tackling the exhaustion issue. The first step is for the judge to conduct "a hearing on exhaustion and [permit] whatever discovery relating to exhaustion he deems appropriate." *Pavey I*, **544 F.3d at 742.** And in holding that hearing, a court may credit the testimony of one witness over another. *See Pavey v. Conley (Pavey II)*, **663 F.3d 899, 904 (7th Cir. 2011)** (**affirming the factual findings of a magistrate judge, whose R & R included factual findings the plaintiff was not credible**). In other words, and unlike other summary judgment motions, the very purpose of *Pavey I* is to allow a judge to resolve swearing contests between litigants.

So while the Court typically undertakes *de novo* review of portions of R & Rs to which a party objects, the Court will give great deference to Judge Williams' factual findings and credibility determinations. *Pavey II*, **663 F.3d at 904. *See also Towns v.***

*Holton,* 346 F.App'x 97, 100 (7th Cir. 2009) (great deference to credibility findings based on demeanor); *Goffman v. Gross,* 59 F.3d 668, 671 (7th Cir. 1995) ("[D]e novo determination is not the same as a *de novo hearing*. The district court is not required to conduct another hearing to review the magistrate judge's findings or credibility determinations.") (emphasis added).

Here, the Court finds no error or deficiency in Judge Williams' credibility determination. Judge Williams provided a sound analysis of the testimony and bolstered his reasoning by reference to the record. Judge Williams identified a number of weaknesses in Plaintiff's testimony—such as the inconsistencies about when he sent his grievances to the ARB or his institutional grievance officer. At varying points during his deposition testimony, Plaintiff said he immediately sent the grievances to the ARB when he got the April 2 grievance back on April 16, but Plaintiff also said it took him a few days, and that he did not send the grievances to the ARB until April 24, 2017. No one disputes that the ARB received the grievances on April 29, 2017. Plaintiff further exacerbates this inconsistency in his objection to the R&R by indicating that he sent grievances quickly because his cell mate was a law clerk and could assist him. If the grievance process was so readily accessible to him, the delay from April 16 to April 29, and his inconsistent testimony about that timeline are cast into even greater doubt than they were when Judge Williams heard about them at the *Pavey* hearing.

Plaintiff's objection to the R&R raises an issue about whether or not Shawnee grievance officers kept a grievance log. However, this issue does not defeat the soundness of Judge Williams' R&R, because, even assuming for a moment that the institution did not keep a grievance log, the undisputed dates in the record that grievances were allegedly sent demonstrate that, at the time Plaintiff communicated with the ARB, he could not have properly exhausted institutional grievance procedures.

Pursuant to the ILLINOIS ADMINISTRATIVE CODE, **20 ILL. ADMIN. CODE § 504.830(a)-(d)**, once a grievance officer receives a grievance, he or she must assess the situation and make a recommendation to the Chief Administrative Officer who has 2 months after receipt of the grievance to respond. Here, Plaintiff alleges that he began the emergency grievance and normal grievance process thru his counselor on April 2, 2015. By April 16, 2015, he alleges that his counselor had denied his grievance. Then on April 24, 2015, he alleges that he sent the issue to the Grievance Officer, and sent a duplicate to the ARB as a safety measure. The ARB confirmed receipt of the April 2 and 24 grievances on April 29, 2015.

April 29 was less than 10 days after the Grievance Officer allegedly received his grievance—so Plaintiff could not have supplied the ARB at that time with proof of exhaustion. The ARB called this to Plaintiff's attention by confirming receipt of his grievance on April 29, 2015, and requesting proof of institutional exhaustion. Plaintiff contends that he sent such proof on June 3, 2015, or, alternatively that he could not send

it because no one responded. Plaintiff's prevailing claim seems to be that he has not received a response at the institutional level. However, if he only communicated with the ARB on June 3, 2015, that was before the time under the Administrative Code would have run up for an institutional response (June 3 is less than 2 months from April 24, 2015). Plaintiff does allege that he sent follow-up letters to the ARB, but he does not allege that he included the proof of institutional level denials in this correspondence—probably because, as he contends, he never received a response. Thus, at least some of Plaintiff's communications with the ARB were premature and necessarily came before institutional exhaustion.

Judge Williams heard Plaintiff's testimony that he sent grievances to his institutional grievance officer some time between April 16 and April 29. He also heard Seip's testimony that the Shawnee grievance log for 2015 did not reflect any grievances from the Plaintiff. Faced with this contradiction, Judge Williams found Plaintiff not credible. The record before the Court provides no reason for the Court to doubt this determination.

Plaintiff also argues that the Defendants' motions for summary judgment cannot be granted because the Defendants have failed to explain what remedies are still available to him to be exhausted. However, in light of Magistrate Judge Williams' finding that Plaintiff did not ever submit a grievance to the institutional grievance

officer in the first instance, there is no need for the Defendants to explain what mechanisms are still available to Plaintiff.

## IV. Conclusion

For the reasons articulated above, the undersigned **ADOPTS** Judge Williams' Report and Recommendation its entirety, and **GRANTS** the motions for summary judgment filed by Defendants Baldwin, Hunter, and Shicker (Doc. 51), and Defendants Garcia and Ritz (Doc. 48).

No claims remain in this case, so the Clerk is **DIRECTED** to enter final judgment against Plaintiff and in favor of all Defendants.

**IT IS SO ORDERED.**

DATED: February 23, 2017

*s/ Michael J. Reagan*
Michael J. Reagan
United States District Judge